posed amendments to the case, and thereafter the judge before whom the case was tried had settled it in the form of the case offered upon the trial. I do not think that it can be inferred from the action of the plaintiff's counsel, or of the judge, that the testimony stated by the case to have been that of the witness on the first trial was the whole of that witness' testimony on the points that appeared by the case to have been touched upon. To permit testimony of a witness upon a former trial, since dead, to be given on the after-trial, it must appear that what is offered is the whole testimony given. On an appeal there is no presumption; and in this instance there was no proof that the whole testimony was necessary to be inserted in the case for the purposes of the appeal, even on the point of whether there should be a reversal upon the facts. Repetitions, incoherencies, terms of phrases, self-contradictions, may have a modified construction placed upon them by the admission of counsel, or the decision of the judge, for the purpose of the appeal, when a jury might properly give another construction. One condition of giving the former testimony of a witness is that it was given as to the issues made upon the former trial, and identical with the issues of the second trial. When the testimony is shaped for the case, the result is that the statement of the case is as to its propriety and relevancy for an appeal. The remaining ground is that it was in the case, and that legally the case is *prima facie* proof of what testimony was given on the trial. The same consideration, however, is to be applied, that the case was made not to perpetuate the testimony, but to form the material of an appeal. Of cases, Chief Justice KENT said in *Elting* v. *Scott*, 2 Johns. 162: "These cases are a species of testimony which ought not, perhaps, in any case to be admitted unless when the admission is made a condition of granting a new trial; nor has it been the practice to admit them. They are generally drawn by counsel without any communication with the parties, and often with a view to bring before the court some particular point unconnected with much of the narrative part of the case, and which for that reason may have passed without criticism or attention." Under objection, the defendant's counsel was allowed to read, as part of the testimony of deceased witness, the following: "Even if a man went into that building in the morning, he could not tell that either one of those sashes was going to fall down." The witness was an expert as to the proper construction of windows and sashes, the effect upon them of weather and use, and as to what would be the exterior appearance from time to time, but not, I think, as to the possibility of a man not being able to tell, from exterior appearances, that the sash was going to fall down. There is still a question of whether the testimony upon the present trial was not such outside of objectionable matter that under the former decision in this case there was no proof of negligence of defendants. As counsel, on the argument, did not advert to the similarity or difference between the former and the present testimony, it is to be assumed that the present case was one for the jury. The judgment should be reversed, as well as the order refusing a new trial, and there should be a new trial, with costs to abide the event. All concur.

---

### LORILLARD *v*. CLYDE *et al*.

(*Superior Court of New York City, General Term.* May 7, 1888.)

CONTRACTS—PARTIES—EQUITABLE INTEREST.

　Plaintiff and defendants agreed to form a corporation, each to hold equal shares. The whole of the stock was to be issued in payment for certain vessels named, two to be contributed by plaintiff. Defendants were to manage the business and assume the leases of certain wharves. One of these was leased to a company controlled by plaintiff, which also owned the vessels plaintiff had agreed to subscribe, and some time after the agreement empowered him to sell them, and apply the proceeds on its indebtedness to him. This company was sued by its lessor for rent of the wharf, and, having paid the judgment, assigned its claim against defendants to plaintiff. *Held* no cause of action. There was no obligation from plaintiff to his

company that would give the latter a right of action, under the rule in *Lawrence* v. *Fox*, 20 N. Y. 268, for a breach of defendants' contract with plaintiff. They were no parties to that contract, nor was plaintiff their agent in making it.

Appeal from judgment dismissing complaint on opinion of Hamilton Odell, referee.

The referee's opinion was as follows:

ODELL, R. In May, 1874, Jacob Lorillard and W. P. Clyde & Co., in order to consolidate "their respective interests in the Philadelphia & New York Transportation Line," agreed together to form a corporation under the laws of the state of New York, with a capital of $300,000, of which the two contracting parties should hold equal shares. The whole of the capital stock was to be issued in payment for certain vessels, specifically named, of which Mr. Lorillard was to contribute two, and Clyde & Co. were to contribute nine. The agreement, which was to take effect on or before July 1, 1874, contained these two provisions: *First.* W. P. Clyde & Co. to have the management of said corporation and business. *Second.* The corporation to assume lease of Lorillard's Philadelphia wharf, and assume leases of piers 33 and 33½, East river, New York, at present rental. The corporation contemplated by the said agreement was formed under the name of the Philadelphia & New York Steam Navigation Company, the said vessels were transferred to it, the capital stock was issued, Clyde & Co. assumed the management. The Philadelphia wharf, above referred to, was at the date of said agreement held under a lease by the Lorillard Steam-Ship Company, of which the said Jacob Lorillard, the plaintiff herein, was the president, and the substantial owner. It is charged in the complaint that Clyde & Co., "though duly requested so to do, neglected and refused to have said lease assumed by the said the Philadelphia & New York Steam Navigation Company, or to pay, or to cause to be paid, the sum of $5,500, the annual rent of said wharf, which became due on the 8th day of April, 1875." It is further alleged that in 1877 the lessor of the said wharf brought suit against the Lorillard Steam-Ship Company to recover the said rent, which suit Clyde & Co. had notice of and opportunity to defend; that judgment was rendered therein against said Lorillard Steam-Ship Company, and was paid; and that the claim or cause of action of the said Lorillard Steam-Ship Company against Clyde & Co., growing out of the transactions thus briefly alluded to, was assigned and set over to the plaintiff. He brings this action as such assignee.

The plaintiff's first proposition is that Clyde & Co. covenanted with Jacob Lorillard that they (Clyde & Co.) would cause the proposed corporation to assume the lease of the Philadelphia wharf and relieve the Lorillard Steam-Ship Company from further liability for rent thereunder, and that such covenant is enforceable by said Lorillard Steam-Ship Company under the rule declared in *Lawrence* v. *Fox*, 20 N. Y. 268. That case has been the cause of many experiments in the courts, and productive of an abundant and odd lot of law-suits. It has been explained and criticised and limited and questioned, but never overruled. Thirty years have elapsed since it was decided, yet the principle upon which it rests is still a matter of uncertainty and dispute. It has been followed as a controlling authority in all cases presenting similar facts, but the doctrine of the case was established with difficulty, and has been yielded to with reluctance, (*Bank* v. *Bank*, 46 N. Y. 90,) and the courts have steadily refused to extend its application to new cases, (*Solinger* v. *Earle*, 82 N. Y. 393.) "We prefer," Judge FINCH says, in *Wheat* v. *Rice*, 97 N. Y. 302, "to restrict the doctrine of *Lawrence* v. *Fox* within the precise limits of its original application." All that the case decides is "that where one person loans money to another upon his promise to pay it to a third party, to whom the party so lending the money is indebted, the contract thus made by the lender is made for the benefit of his creditor, and the latter can maintain an action upon it without proving an express promise to himself from the party

receiving the money." RAPALLO, J., in *Garnsey* v. *Rogers*, 47 N. Y. 240. A right of action does not accrue to a third party, because a promise has been made by one to another for his benefit. There must be some obligation or duty owing from the promisee to the third party which would give the latter a legal or equitable claim to the benefit of the promise, or an equivalent from the promisee personally. This was distinctly held in *Vrooman* v. *Turner*, 69 N. Y. 280. The court said that "in every case in which an action has been sustained there has been a debt or duty owing by the promisee to the party claiming to sue upon the promise. Whether the decisions rest upon the doctrine of agency, the promisee being regarded as the agent of the third party, who, by bringing his action, adopts his acts, or upon the doctrine of a trust, the promisor being regarded as having received money or other things for the third party, is not material. In either case there must be a legal right, founded upon some obligation of the promisee, in the third party, to adopt and claim the promise as made for his benefit." It is argued by the learned counsel for the plaintiff that the only limitation put by the case last cited upon the broad rule of *Lawrence* v. *Fox* is in requiring that the third party shall not be stranger to the transaction, and that there shall be some privity between him and the promisee whereby the latter will derive a benefit from the execution of the promise. Benefit to the promisee, however, is not the basis upon which any of these cases rest. It is the promise made for the benefit of the third party that the courts enforce, and the privity between him and the promisee which the law requires is that which arises from some debt or duty due from the latter to the former, which the promisor engages to discharge. In other words, there must be—*First*, an existing claim against the promisee in favor of a third party, and, *second*, an engagement by the promisor to discharge his own liability to the promisee by the payment or satisfaction of such claim. In the absence of either of these conditions, the doctrine of *Lawrence* v. *Fox* has no application. I am unable to find in this case any debt or obligation due from Lorillard to his steam-ship company, which the defendants, by the agreement of May, 1874, undertook to perform; nor is it claimed that any such existed.

The plaintiff's second ground of contention is that the defendants became directly liable to the Lorillard Steam-Ship Company upon this agreement upon "general principles of agency." It is not suggested that the agreement, as executed, is the agreement of the company, but the claim is, as I understand it, that certain provisions contained therein were inserted for the company's benefit, and that, in respect of those provisions, Mr. Lorillard, in making the agreement, acted as the company's agent, and in its behalf. One of these provisions was that relating to the assumption by the proposed new corporation of the lease of the Philadelphia wharf. It is not alleged in the complaint that Mr. Lorillard, in anything that he did in connection with this transaction, acted, or assumed to act, as the agent of his steam-ship company. In respect of the lease, and to that extent, the complaint says "that the said agreement was made in behalf of and for the benefit of the said Lorillard Steam-Ship Company, and the said Clyde & Co., in and by said agreement, undertook and agreed with and for the benefit of the said Lorillard Steam-Ship Company that the said Philadelphia & New York Steam Navigation Company should, when organized, assume said lease," etc. A similar allegation might have been, and probably was, made by Lawrence when he sued Fox upon the promise which Fox had made to Holly. The rule relied on by the learned counsel for the plaintiff, that a principal may adopt and enforce in his own name a contract made in his behalf in the name of his agent, is not denied, but it does not seem to be applicable here. The act of the agent, that is, the making of the contract in such a case, must be the act of the principal, and although the name of the principal may not appear on the face of the transaction, yet, as Judge FOLGER says, in *Railway Co.* v. *Tyng*, 63 N. Y. 655, "evidence will be

received to let in a party not apparent in the contract," and it makes no difference whether the principal seeks to enforce the contract, or the other party seeks to hold him liable upon it. *Briggs* v. *Partridge*, 64 N. Y. 357. But whenever the contract is the contract of the party who signs it, a third party, who claims to enforce one of its provisions on the ground that it was made and intended for his benefit, must seek his remedy, if he has any, in the way pointed out in *Lawrence* v. *Fox*. It seems to me too plain to admit of serious dispute that the agreement of May, 1874, was the personal agreement of Mr. Lorillard. His counsel calls attention to the fact that "prior to the time of the going of the contract into effect Mr. Lorillard received formal authority from the directors of the company to carry out the provisions of the contract." There is a trifling inaccuracy in this statement, as will appear by referring to the proofs. The resolution of the directors was as follows: "On motion of Jacob Lorillard it was resolved that the company shall sell the steamers ' Vindicator ' and ' Fanita ' to the Philadelphia & New York Steam Navigation Company, for the sum of $170,000; and that the president shall deliver proper documents or bills of sale for the same." And, also, "that Jacob Lorillard shall sell and dispose of the steamers ' Mediator ' and ' North Point,' or any other property this company may possess, at such times and such prices as he may see fit, and deliver proper documents and bills of sale of same, and close up the affairs of this company, and its indebtedness to himself." This resolution was adopted on the 17th of June, a month after Lorillard had signed his agreement with Clyde. It does not appear that the nature, or even the existence, of that agreement was made known to the directors, and it would seem that it had then already been partially performed by the parties to it by the formation of the new corporation which it contemplated, Certainly there was nothing in the resolutions authorizing Mr. Lorillard to exchange the two steamers first named for stock of such new company at par. The fact is that there was very little of the Lorillard Steam-Ship Company besides Mr. Lorillard. He owned nearly the whole of its stock, and he controlled its action. He was its creditor in a large amount, and the hope of securing this indebtedness, and the desire to close up an unprofitable business, were leading considerations in his trade with Clyde & Co.

The plaintiff's third proposition is that "the contract was fully executed by the Lorillard Steam-Ship Company as to the part of the consideration to be furnished by it, and that the defendants, having accepted performance from the latter, are estopped from denying its rights to enforce so much of the contract as was intended for its benefit." This assumes erroneously, as I think, that the steam-ship company was in fact a party to the contract, and bound to at least a partial performance of it. The language of the contract is: "They (Lorillard & Clyde) shall form a corporation." "They (Lorillard & Clyde) shall contribute property." "Jacob Lorillard puts in the steamers Vindicator and Fanita." No part of the consideration was to be furnished by the Lorillard Company. That company incurred no liability under the agreement. Clyde could have had no complaint or remedy against it if Lorillard had refused to perform the agreement upon his part. It is true that the said steamers belonged to the company, and that the company conveyed them to the new corporation, at Mr. Lorillard's request, but clearly such conveyances were not made in fulfillment of any obligation assumed by, or resting upon, the company; nor can it be fairly said that they were accepted by Clyde or the new corporation otherwise than as a performance by Lorillard of his personal engagement. There is no pretense in the complaint that the steam-ship company did anything towards the performance of this agreement. On the contrary, it is substantially admitted that the transfer of the vessels was the act of Lorillard, the allegation being that "the plaintiff transferred, or caused to be transferred, to the said corporation the steamers mentioned in said agreement, as required by the terms thereof, and in all respects fully kept and per-

formed said agreement, and the conditions thereof, on his part." And in the action .between these same parties, in the city court of Brooklyn, in which plaintiff recovered judgment against these defendants for a large amount, in 1883, one of the findings of the court on which that judgment was found was that pursuant to this very agreement "the plaintiff transferred to the said the Philadelphia & New York Steam Navigation Company the steamers Vindicator and Fanita mentioned in said agreement, and that 1,700 shares of the stock of said company, of the par value of $100 each, were issued to him therefor on or about June 20, 1874." It is my opinion that neither of the grounds of recovery contended for by the plaintiff is tenable, and the motion to dismiss the complaint is therefore granted.

Argued before SEDGWICK, C. J., and FREEMAN and O'GORMAN, JJ.

*Glover, Sweezy & Glover,* for appellant.   *Boardman & Boardman,* for respondents.

PER CURIAM.   Judgment affirmed on the opinion of the referee.

---

## STEWART *v.* METROPOLITAN EL. RY. CO.

*(Superior Court of New York City, General Term.* December, 1888.)

HIGHWAYS—OWNERSHIP OF FEE—PRESUMPTION.
   In the absence of evidence to the contrary, the presumption is that the owners of lots abutting on a public street own the fee of the street.

Appeal from jury term.

Action by Emily Stewart against the Metropolitan Elevated Railway Company to recover damages (loss of rental value) for an alleged obstruction to land of which plaintiff claimed to own the fee, the same being a part of Fifty-Third street in the city of New York.   Judgment for plaintiff, and defendant appeals.

Argued before FREEDMAN and INGRAHAM, JJ.

*Davies & Rapallo,* for appellant.   *Henry H. Man,* for respondent.

INGRAHAM, J.   The case on appeal contains a statement that "the case is conceded to contain the substance of the testimony offered by either side upon the trial of this action."   Plaintiff testified that she was the owner of and resided in the house in question, fronting on Fifty-Third street, and being 18 feet, 9 inches, in width on the street.   The fact of ownership, and that the premises abutted on the street, must be presumed to have been proved by competent evidence.   A photograph of the house in question was received in evidence, but is not printed with the case.   There is no evidence to show how Fifty-Third street in front of the premises in question was opened as a street, or as to the ownership of the fee of the street.   The abutting owners were therefore presumed to own the fee of the street.   See *Wager* v. *Railroad Co.,* 25 N. Y. 529, where SMITH, J., in delivering the opinion of the court, says: "It is an established inference of the common law that the proprietors of the land adjoining a public highway are the owners of the fee of said highway; that the rights of the public therein and thereto are no higher or other than those of a mere easement; and that the proprietors on each side presumptively own the soil in fee to the center of the highway.   There is no distinction in this respect between the streets of a city and highway in the country."   The plaintiff being presumed to be the owner of the fee of Fifty-Third street, the erection of the defendant's structure on the street was an encroachment upon her freehold, and a trespass.   *Wager* v. *Railroad Co., supra.*   It was therefore no error to deny the motion of the defendant to dismiss the complaint, and the motion to direct a verdict for nominal damages only.   As the only exceptions that appear in the case are the exceptions to these rulings,